UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **FEDERAL INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | |
| **NEW HAMPSHIRE INSURANCE COMPANY, ET AL** | **NO. 03-385-C-M2** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, November 2, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**FEDERAL INSURANCE COMPANY**                                               **CIVIL ACTION**

**VERSUS**

**NEW HAMPSHIRE INSURANCE**                                                **NO. 03-385-C-M2**
**COMPANY, ET AL**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the Rule 12(b)(6) Motion to Dismiss filed by defendants, New Hampshire Insurance Company ("New Hampshire") and AIG Technical Services, now known as Chartis Claims, Inc. ("Chartis")(collectively "defendants"). Plaintiff, Federal Insurance Company ("Federal"), has filed an opposition (R. Doc. 34) to defendants' motion. All parties have also filed reply memoranda in relation to defendants' motion. (R. Docs. 38 and 40).

## FACTS & PROCEDURAL BACKGROUND

This suit was originally filed in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana. In the original petition, Federal alleged that New Hampshire or Chartis issued a commercial umbrella liability policy of insurance to Thomas & Betts Corporation ("T&B"), providing policy limits of $25 million for the January 1, 1999 to January 1, 2000 policy period. *See*, Petition for Damages, attached to Notice of Removal, R. Doc. 1, ¶ 2. Federal further alleged that such policy issued by New Hampshire or Chartis is the underlying insurance policy to a policy of excess insurance issued by Federal to T&B. *Id.,* at ¶3. Federal asserted that, as the insurer of T&B under a policy of excess insurance, its policy does not apply until after New Hampshire or Chartis is obligated to pay the full

1

amount of its policy limits under the underlying insurance policy. *Id.*, at ¶4.

Federal also alleged in the petition that T&B was named as a defendant in various suits for damages arising from an incident that occurred at an aluminum processing plant owned by Kaiser Aluminum Corporation on July 5, 1999, in Gramercy, Louisiana. *Id.*, at ¶5. Those various suits were consolidated in state court, and in the course of that consolidated litigation, a settlement demand was made upon T&B by one of the injured plaintiffs, Wayne Robins, Jr. ("Robins"). *Id.*, at ¶6. According to the petition, the settlement demand was initially made upon New Hampshire or Chartis; however, those entities refused to settle with Robins. *Id.*, at ¶7. After the underlying insurer refused to settle (as is more fully explained in the allegations set forth in Federal's amended complaint, which is discussed below), Robins then demanded settlement against T&B and Federal, as T&B's excess insurer. *Id.*, at ¶8. Federal alleged that, because the settlement was "necessary to protect the interests of the insured [T&B]," it "stepped in and paid the sum of Nine Hundred Ninety Thousand and 00/100 ($990,000.00) Dollars in settlement of Robins' claim." *Id.*, at ¶9.

According to the petition, the settlement payment Federal made to Robins was "reasonable and the payment of same was within the duty of the underlying insurers," New Hampshire and/or Chartis, under the circumstances, and through such payment, Federal became legally and contractually subrogated to the rights of T&B to pursue New Hampshire and/or Chartis up to the amounts paid by Federal in settlement of Robins' claim, plus legal interest. *Id.*, at ¶12. Thus, through the present suit, Federal is seeking "legal and/or contractual indemnity" from New Hampshire and/or Chartis for all amounts paid by Federal in settlement of Robins' claim (*i.e.*, reimbursement of the $990,000.00 paid). *Id.*, at ¶¶13-

14.

New Hampshire and Chartis removed Federal's suit to this Court in May 2003. The case was administratively closed in August 2003 and reopened upon motion of Federal in March 2009. On June 16, 2009, Federal filed an amended complaint and added the following paragraphs, among others, to its allegations in this suit:

5(a).

The various suits in which [T&B] was sued arising from the incident that occurred on July 5, 1999 at an alumina processing plant owned by Kaiser Aluminum Corporation located in Gramercy, Louisiana, were handled by defendants in an *in globo* fashion, referred to at times as: "Kaiser suits," "Kaiser Lawsuits" . . . or other similar fashion that indicates the inter-relatedness of the claims arising from the July 5, 1999 incident.

****

5(c).

The various suits in the Kaiser Litigation were in large part consolidated for the purpose of discovery and trial.

5(d).

Because of the *in globo* handling of the various suits, overall litigation strategy necessarily involved numerous individual claimants.

5(e).

As a result, the claims handling decisions made relative to one claimant could impact and affect other related claims stemming from the same July 5, 1999 incident.

6(a).

In the course of the Kaiser litigation, counsel for [T&B] recognized the necessity of settling with Wayne Robins to obtain strategical benefits to its defense strategy associated with having one of the major plaintiffs in the Kaiser litigation not directly aiming liability at [T&B].

3

6(b).

On or about October 7, 2001, the day before the 27-day trial commenced in the Kaiser litigation, counsel for T&B Corp. thereby entered into a [settlement agreement with Wayne Robins].

6(c).

The terms of the agreement included the payment of sums to Wayne Robins, the right to a reversionary interest in sums received by Wayne Robins with other defendants in the suit, the assumption of Wayne Robins' and his counsel's contingent liability up to a stated sum, and assistance by Wayne Robins' counsel in effectuating settlements with other plaintiffs.

6(d).

The aggregate total to fund the entire settlement agreement entered into with Wayne Robins by counsel for T&B was well within the limits of [New Hampshire's] policy.

6(e).
[Chartis and/or New Hampshire] refused to fund the entirety of the settlement agreement that counsel for [T&B] reached with Wayne Robins. In particular, on or about December 7, 2001, counsel for [New Hampshire] placed $5,000,000 into the registry of the court, and refused to pay other sums made part of the settlement agreement.

6(f).

Chartis and/or New Hampshire's refusal to fund the entirety of the settlement agreement was despite the fact that [the] total sum of the entire settlement with Wayne Robins was well within the limits of [New Hampshire's] policy and despite repeated demand by its insured, [T&B].

6(g).

Chartis . . . served as the claims administrator for [New Hampshire] in handling the Kaiser litigation. As the agent or servant of [New Hampshire], any negligence or fault of Chartis

4

is imputed to [New Hampshire] who is liable therefor.

6(h).

Wayne Robins moved to enforce the settlement, and included within the motion, as amended, claims for additional damages and bad faith.

6(i).

During settlement discussions prior to the hearing on Wayne Robins' motion to enforce settlement and on its contingent liability, which was scheduled for January 18, 2002, the court indicated its intentions to grant the motions.

6(j).

Had the motion been granted, a minimum adverse judgment in the amount of $1,200,000 would have been entered against [T&B].

6(k).

In light of this imminent risk of an adverse judgment and the ongoing Kaiser litigation, counsel for T&B obtained an agreement to settle the remaining portion of Wayne Robins' claim.

14(a).

The payment for which Federal seeks reimbursement in this suit was made in April 2002.

*See*, Amended Complaint, R. Doc. 27.

On July 6, 2009, the defendants filed the present motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of Federal's claims on the ground that Federal has no cause of action against them for contractual or legal subrogation. Specifically, defendants contend that Federal has no cause of action for contractual subrogation because Federal voluntarily contributed the $990,000 to the settlement without New Hampshire's consent, which was required by the provision of New Hampshire's policy that

5

gave New Hampshire the exclusive right to settle claims up to its policy limit of $25 million (*i.e.*, the "consent to settle" clause).  Defendants further contend that Federal's claim against New Hampshire for legal subrogation fails because Federal has not alleged in its amended complaint that it was obligated to pay the $990,000.00 to Robins in settlement under its own excess insurance policy.  Finally, defendants assert that Federal has no cause of action against Chartis for contractual subrogation because Chartis, as a third party claims administrator for New Hampshire, had no contractual relationship with T&B.  The defendants' motion was referred to the undersigned for a report and recommendation on September 15, 2009.

## LAW & ANALYSIS

**I.      Rule 12(b)(6) standard:**

Under Fed. R. Civ. P. 12(b)(6), a claim may not be dismissed unless it appears certain that the plaintiff will not be able to prove any set of facts in support of his claim that would entitle him to relief.  *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994), citing, *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).  The court must accept all well-pleaded facts as true and must review them in the light most favorable to the plaintiff.  *Green*, supra, at 1086.  Put another way, the court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746 (1963).  Accordingly, a plaintiff need not necessarily plead a particular fact if that fact can be reasonably inferred from the facts properly alleged.  *Id.*  Finally, all doubts and ambiguities concerning the sufficiency of the plaintiff's claim are to be resolved in favor of the plaintiff.  *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1996).

**II.    Does Federal have a cause of action against New Hampshire under legal and/or contractual subrogation principles?**

As a preliminary matter, the Court notes that, although Federal alleged that New Hampshire and/or Chartis issued the policy of underlying insurance coverage at issue in this case, it is evident from a copy of the policy itself that New Hampshire issued the policy, and not Chartis.  As mentioned above, Chartis is the third party administrator that handled adjustment of claims on policies issued by New Hampshire; thus, it was not the issuer of the policy to T&B that is in question in this lawsuit.  *See, In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(Even though a copy of the contract is not attached to the complaint, it could nevertheless be considered on a motion to dismiss where it was attached to that motion, referred to in the complaint, and was central to the plaintiff's claims).[1]  Since the insurance policy issued by New Hampshire is central to Federal's claims, the Court may consider it as evidence even though it was not attached to Federal's original petition or amended complaint.

As noted above, in their motion, defendants first contend that Federal cannot recover from New Hampshire the amount it paid in settlement under conventional subrogation principles because the allegations of the amended complaint indicate that New Hampshire had the exclusive right to settle the Robins claim up to the primary policy limits of $25 million pursuant to a "consent to settle" clause contained in the primary policy, and

---

[1] *See also, Fin. Acquisition Partners v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)(Even in a Rule 12(b)(6)-type analysis, the court can consider as part of the pleadings documents "upon which [p]laintiffs relied in bringing the suit."  The identity of the insurer is exactly the type of discrete fact that warrants a limited piercing of the pleadings).

New Hampshire did not consent to any payment above the $5 million it authorized.[2] Federal, however, points out that, under certain "exigent circumstances," Louisiana courts have refused to give effect to "consent to settle" clauses like the one relied upon by the defendants in this case. For example, in *Emile M. Babst Co. v. Nichols Construction Corp.*, 488 So.2d 699 (La. App. 1 Cir. 1986), the Louisiana First Circuit Court of Appeals held that a "no action clause" (which is similar to a "consent to settle" clause and provides that an insured has no action against an insurer for reimbursement if the insured breaches the terms of the insurance policy in entering into a settlement) has no effect where an insurer "denies coverage where there is coverage, or unjustifiably delays settlement, forcing the insured to settle separately" because "time is of the essence," in that the insured has an "immediate risk of losing money" if the claim is not settled. Similarly, in *Thomas W. Hooley & Sons v. Zurich General Accident & Liab. Ins. Co.*, 235 La. 289, 103 So.2d 449 (La. 1958), the Louisiana Supreme Court held that a "no action clause" was ineffective where the coverage defense asserted by the insurer was found to be wrongful, and the insured's payment was reasonable and served to reduce the insurer's liability.

Additionally, relative to New Hampshire's second argument that Federal has no right to legal subrogation because it was not obligated to pay the $990,000.00 under its own excess insurance policy, Federal has referenced jurisprudence recognizing an excess insurer's right to reimbursement from a primary insurer through principles of legal

---

[2] In support of that argument, defendants rely upon the following authorities. *See*, Lee R. Russ & Thomas F. Segalla, 14 COUCH ON INS. § 203:38 (collecting cases)("[A]n insured that enters into a settlement without the insurer's consent breaches the terms of the policy, thereby voiding any coverage for the settlement); Allan D. Windt, 1 INS. CLAIMS & DISPUTES 5th § 3:9 (collecting cases)(the result of an insured's failure to comply with a "consent to settle" clause "is that the company is under no obligation to contribute to the settlement); *Danrik Const. v. Am. Cas. Co.*, 314 Fed. Appx. 720, 722, 2009 WL 667370 (5th Cir. 2009).

subrogation where the amount paid in settlement by the excess insurer is within the primary policy limits, and the excess insurer is not technically obligated to pay the settlement amount under its excess insurance policy, but where it is "bound" to pay that amount because "it is to [the insured's] interest to discharge it" so that the insured "will not be cast for a large sum." *Maryland Cas. Co. v. Marquette Cas. Co.*, 143 So.2d 249, 252 (La. App. 4 Cir. 1962).

In *Marquette*, Gulf Engineering Company had been issued a primary insurance policy by Marquette with limits of $5,000.00. It also had an excess insurance policy issued by Maryland. Gulf was sued for over $400,000.00, and it called upon Marquette to defend it. Marquette refused, and Gulf therefore called upon Maryland to defend it. The suit was ultimately settled for $4,375.00, with Marquette contributing $4,125.00 and Maryland $250.00. Thus, Maryland paid an amount in settlement that was within the $5,000.00 underlying policy limits and that it was not technically obligated to pay under its excess insurance policy. Maryland later sued Marquette seeking reimbursement of the $250.00 it paid in settlement pursuant to subrogation principles. The court held that Maryland was entitled to recover from Marquette the $250.00 it paid in settlement under legal subrogation principles even though that amount was within the underlying policy limits. Specifically, the court found that Marquette had "failed to honor its contractual duty of defending" Gulf and "refused to make settlement" on behalf of Gulf, and Maryland had a "sound interest in discharging the claim against Gulf because, if the suit had not been settled, there existed the possibility that Gulf would have been cast for a large sum." *Id.* The court noted that, if a judgment for more than the primary policy limits of $5,000.00 had been recovered, which was "entirely possible, both insurers would have been compelled to pay their

9

contractual share thereof, so it could be said that both insurers *were bound for the debt*." *Id.* [Emphasis added]. According to the *Marquette* court, the right of legal subrogation extends to every case where a person pays a debt wherefore he is bound with another "when it is in his interest to discharge it," and as a result, Maryland could use all means to enforce payment from the primary insurer because it had been legally subrogated to all of the creditor's rights. *Id.*

Thus, in order to determine whether Federal has a cause of action against New Hampshire for contractual and/or legal subrogation under the standards set forth in the above jurisprudence, the Court must examine whether the facts, as alleged in the original petition and amended complaint, indicate that New Hampshire: (1) denied coverage of the Robins' settlement when it was covered, or (2) "unjustifiably delayed" settlement with Robins under circumstances where "time was of the essence." Put another way, were the circumstances such that, if Federal did not pay the $990,000.00 in settlement, T&B had the imminent risk of being cast for a large sum of money, in which case the "consent to settle" clause upon which New Hampshire relies would not be effective (*See, Babst*) and Federal could be considered "bound" to pay the $990,000.00 even though it was not technically obligated to pay that amount under its own excess insurance policy (*See, Marquette*).

Given the legal standard that must be applied when considering a Rule 12(b)(6) motion to dismiss (*i.e.*, that all of plaintiff's well-pleaded allegations must be taken as true and all doubts and ambiguities resolved in its favor), the Court cannot definitively find that Federal lacks a cause of action against New Hampshire under legal and/or conventional subrogation principles. Although Federal concedes in its allegations that New Hampshire paid $5 million toward the settlement with Robins, such that the Court cannot find New

10

Hampshire outright denied coverage of Robins' claim, Federal's allegations, when accepted as true, could nevertheless still indicate that New Hampshire "unjustifiably delayed" completion of the settlement agreement with Robins when "time was of the essence" because T&B was at an imminent risk of losing money, either via the minimum adverse judgment of $1.2 million that allegedly could have been rendered if the trial court had granted Robins' motion to enforce settlement or via an even larger potential amount in the event the Robins' settlement was not effectuated (due to New Hampshire's refusal to contribute further to that settlement), and Robins proceeded to trial the next day as one of the "major plaintiffs" aiming liability at T&B.[3][4]  Considering that such allegations, when construed most favorably toward Federal, indicate that the "consent to settle" clause should be of no effect under Louisiana jurisprudence, the fact that Federal paid an amount within

---

[3] Federal explains, in its opposition, that one day after a "memorandum of agreement" was obtained between the "T&B interests" (which, according to Federal's supplemental memorandum in opposition, included all of T&B's counsel and its insurance carriers, including New Hampshire) and counsel for Robins, a 27-day trial commenced in the Kaiser litigation.  Although the jury returned a verdict of 0% fault on the part of T&B, the plaintiffs filed a Motion for Judgment Notwithstanding the Verdict and, alternatively, a Motion for New Trial and Change of Venue, which was decided by the same state court judge who indicated he was inclined to grant the motion to enforce settlement filed by Robins.  That judge granted the plaintiffs' JNOV and new trial motion, establishing 25% fault on the part of T&B, and assessing T&B with damages in the amount of $335 million, indicating that T&B's exposure in this case was significantly in excess of the $25 million primary policy limits and could have exceeded all of its "insurance layers," as Federal contends in its opposition.  Although Federal notes that the case has "gone up and down on various appeals," and the JNOV ruling was overturned on March 26, 2006, additional appellate review is apparently proceeding currently, and that ruling is not yet final.

[4] Federal has alleged that the settlement agreement with Robins was part of an "overall defense strategy."  Construing that allegation most favorably toward Federal, that means New Hampshire, as a defendant, took part in that strategy and was in agreement with such settlement.  Although not specifically alleged in the amended complaint, Federal's opposition to the present motion indicates that the settlement agreement not only required payment of $5 million to Robins but also payment of a stated sum for Robins' and his counsel's contingent liability.  *See*, R. Doc. 34, p. 4.  Federal contends that New Hampshire agreed to the entirety of the settlement agreement with Robins the day before the Kaiser trial commenced but then refused to pay anything toward the contingent liability portion when demanded.  That is the reason Robins filed the motion to enforce the settlement agreement and sought additional damages and penalties for bad faith.  Thus, construing all reasonable inferences and doubts in Federal's allegations in its favor, as this Court is required to do herein, Federal has sufficiently alleged that New Hampshire "unjustifiably delayed" completion of the settlement agreement with Robins that had been agreed to by all defendants as part of an overall strategy.

the $25 million policy limits of New Hampshire's primary policy on behalf of the common insured without New Hampshire's consent is of no consequence. In sum, as in *Maryland Cas. Co. v. Marquette Cas. Co.,* New Hampshire could be viewed as having refused to effectuate the entirety of a settlement agreement which Federal alleged was part of an "overall defense strategy" to which New Hampshire agreed, and because Federal believed it had a "sound interest" in discharging Robins' claim against T&B, Federal can seek reimbursement from New Hampshire because it has been subrogated to T&B's rights.[5][6]

---

[5] Although defendants attempt to distinguish the various cases cited by Federal on the ground that they involved situations where an excess insurer was found entitled to reimbursement under subrogation principles, where the settlement amount paid by the excess insurer was, in fact, in excess of the amount covered by the primary policy, the Court agrees with Federal that Louisiana law should not be interpreted as permitting reimbursement only after an excess judgment has actually been levied against an insured. The Court interprets the law as allowing reimbursement when an excess insurer pays a settlement amount in the good faith belief that it is protecting the insured and avoiding an excessive judgment, regardless of whether an excess judgment is later rendered. In the present case, because of New Hampshire's refusal to fund the entirety of the settlement agreement to which it had allegedly agreed with Robins, Federal had a good faith belief that, if the Robins' claim went to trial along with that of the other Kaiser claimants, the $335 million judgment that was found on JNOV could be rendered, and Federal therefore effectuated the settlement to avoid that potential liability, which exceeded all of T&B's layers of insurance coverage.

Additionally, the Court finds that the unpublished decision out of the Fifth Circuit Court of Appeals upon which defendants rely, *Danrik Const. Inc. v. American Cas. Co. of Reading Pennsylvania,* 314 Fed. Appx. 720 (5th Cir. 2009), is distinguishable from this matter. In that case, an insured construction company entered into settlement agreements with claimants unilaterally and without its insurers' consent or authorization as required by a "consent to settle" clause in the insurance policy. The Fifth Circuit held that the insurers were discharged from any obligations under the policy, and the insured was precluded from recovering for alleged breach of fiduciary duties related to the insurers' refusal to pay the claims. The Fifth Circuit recognized that whether a court will excuse a breach of a "consent to settle" clause "depends on the circumstances of the case." Unlike in *Babst*, where the insured had the immediate risk of losing a subcontract and the money related thereto if the insured did not settle the claim, the Fifth Circuit found that *Danrik* did not involve a "time is of the essence" situation where the insured had to ack quickly to avoid losing business/money. In *Danrik*, the insurers initially offered a settlement amount to the claimants, which the claimants refused. After that refusal, Danrik voluntarily settled the claims without the insurers' consent. The Fifth Circuit found Danrik's suggestion that any attempt to obtain consent to settle from the insurer was futile was an unavailing argument since the insurers had stipulated that they would have paid the amount their expert stated was reasonable and necessary and would not have objected to Danrik paying the difference. Finally, the Fifth Circuit found that the insured's unilateral settlement prejudiced the insurer because an insurer's right to participate in the settlement process is an essential prerequisite to its obligation to pay a settlement. When an insurer is not consulted about the settlement and does not have an opportunity to participate in and consent to the settlement decision, as in the *Danrik* case, the "consent to settle" clause in the policy precludes a reimbursement action.

Under the allegations presented in the amended complaint, *Danrik* is distinguishable from the present action because, in paying the $990,000 in settlement with Robins, Federal was acting in a

12

However, although the Court finds that Federal has viable claims against New Hampshire under subrogation principles, it does not find that such claims exist against Chartis, as New Hampshire's third party claims administrator.  Defendants are correct that, as an alleged contractual subrogee of T&B, Federal "steps into the shoes" of T&B and can only assert those claims against Chartis that T&B has the rights to assert.  *Hose v. Younger Bros., Inc.*, 2003-1046 (La. App. 1 Cir. 2004), 878 So.2d 548 (If the victim-obligee's rights are assigned or subrogated to another, including an excess insurer of the obligor, the excess insurer "steps into the shoes" of the victim; then, as the subrogee, the excess insurer may recover the amount of the proven debt); *Institute of London Underwriters v. First Horizon Ins. Co.,* 972 F. 2d 125, 127 (5th Cir. 1992).

Because Chartis did not issue the primary policy in question, T&B does not have a contractual relationship with Chartis as its primary insurer.  Furthermore, any duty to contribute to the settlement agreement with Robins on behalf of T&B was owed by New

---

situation where "time was of the essence" because T&B could be subject to a significant adverse judgment.  Furthermore, since New Hampshire initially agreed to the entirety of the settlement agreement with Robins, which allegedly included the provision for payment of contingent liability, it does not appear that such settlement provision was unilateral on the part of T&B and/or Federal.  Additionally, unlike in *Danrik*, the claimant in the present case, Robins, did not initially refuse a settlement offer by New Hampshire, and then T&B and Federal later came in and unilaterally settled with Robins.  Finally, the Court does not find the prejudice that existed in *Danrik* because New Hampshire had an opportunity to participate in the settlement agreement process, and according to Federal's allegations, New Hampshire agreed to payment of an amount for contingent liability but simply later refused to pay that amount.

[6] Under Federal's contract of insurance with T&B, Federal is permitted to participate in settlements when it feels liability might exist under the terms of the policy.  Furthermore, the policy specifically provides for Federal's contractual subrogation rights in that it transfers T&B's rights to Federal upon payment.  *See*, Federal insurance policy, Exhibit A to Federal's opposition, p. 1 ("We will not be obligated to assume charge of the investigation, settlement or defense of any claim made, or suit brought, or proceedings instituted against you.  We will, however, have the right to participate in the investigation, settlement or defense of any suit or proceeding which relates to any occurrence that we feel may create liability on our part under the terms of the policy"); p. 9 ("If the insured has rights to recover all or part of any payment we have made under this insurance, those rights are transferred to us").

Hampshire as the issuer of the primary policy, not by Chartis as the third party administrator. *Marketfare*, at *4 (Louisiana law does not recognize a cause of action against a claims adjuster for improperly adjusting a claim. Adjusters hired by insurers to adjust claims typically owe no duty to the insureds. Without an allegation of a separate underlying offense by the adjuster, the cause of action for improper adjustment and payment of claims (or wrongful delay of payment) is against the insurer). As such, T&B does not have a claim against Chartis under the primary policy, and Federal therefore does not have a claim against Chartis under contractual or legal subrogation principles. Federal does not appear to dispute this finding in its briefs relating to the present motion as it completely fails to address it.[7]

Finally, although Federal contends that it has sued Chartis in its role as New Hampshire's agent on the ground that "any negligence or fault of [Chartis] is imputed to New Hampshire," the Court agrees with defendants that Chartis cannot be held independently liable for its acts as an alleged agent of New Hampshire when New Hampshire is named as a defendant in this case and alleged to be responsible for reimbursement of the $990,000.00 Federal paid in settlement. Such a theory of recovery would directly contradict Louisiana jurisprudence cited above, holding that there is no cause of action against an insurance adjuster for improperly adjusting a claim because an adjuster's duties run only to the insurer and not to the policyholder. Thus, even if Chartis could be considered an agent of New Hampshire in acting as its third party administrator relative to T&B's claims, because Chartis' duties ran only to New Hampshire and not to

---

[7] The only cases cited by Federal in its briefs relate to an excess insurer's rights to legal and/or conventional subrogation from a primary insurer itself.

14

T&B, Federal has no rights against Chartis as a subrogee of T&B.  Accordingly, Federal's claims against Chartis should be dismissed with prejudice.

## RECOMMENDATION

For the above reasons, it is recommended that the Rule 12(b)(6) Motion to Dismiss filed by defendants, New Hampshire Insurance Company and AIG Technical Services, now known as Chartis Claims, Inc., be **GRANTED IN PART**, in that plaintiff's claims against Chartis Claims, Inc. should be **DISMISSED WITH PREJUDICE**, and **DENIED IN PART**, with respect to plaintiff's claims against New Hampshire Insurance Company.

Signed in chambers in Baton Rouge, Louisiana, November 2, 2009.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**