UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FEDERAL INSURANCE COMPANY                                          CIVIL ACTION

VERSUS

NEW HAMPSHIRE INSURANCE                                           NO. 03-385-C-M2
COMPANY, ET AL

## RULING & ORDER

This matter is before the Court on the Motion to Compel Rule 30(b)(6) Deposition of New Hampshire Insurance Company, Deposition of James Maddiona and Other Discovery (R. Doc. 49) filed by plaintiff, Federal Insurance Company ("Federal"). Defendant, New Hampshire Insurance Company ("New Hampshire"), has filed an opposition to Federal's motion as well as a Cross-Motion for Protective Order.  (R. Docs. 51 and 52).

In this subrogation suit, Federal, an excess insurer, seeks reimbursement from New Hampshire, the underlying insurer, in the amount of $990,000.00 that Federal paid on behalf of the parties' common insured, Thomas & Betts Corporation ("T&B"), to settle a claim filed against T&B by Wayne Robins ("Robins").  As discussed in detail in the undersigned's Report & Recommendation dated November 2, 2009 (R. Doc. 44), Robins filed suit against T&B and other defendants in the 23rd Judicial District Court, Parish of St. James, in April 2000 as a result of bodily injuries he sustained in a July 5, 1999 explosion at a Kaiser Aluminum Corporation plant in Gramercy, Louisiana.  Later that year, his suit was consolidated with numerous other lawsuits that had been filed as a result of the July 1999 explosion.  Among the consolidated lawsuits was *AXA Global Risks et al v. Thomas*

1

*& Betts et al*, Docket No. 26,865; the plaintiffs in that suit were AXA Global Risks and other property insurers who had paid business interruption and property damage losses to Kaiser as a result of the explosion and who sought to recover those payments from T&B and other defendants by way of subrogation.

Prior to the consolidation of the various lawsuits, AXA agreed to loan Robins $400,000.00 to secure his participation as a joint plaintiff in the underlying lawsuits. Eleven (11) months later and two (2) days before the trial of the consolidated lawsuits, AXA entered into another agreement with Robins, wherein it agreed to loan him an additional $500,000.00 in exchange for his continued participation as a plaintiff. The second agreement between AXA and Robins required Robins to repay the $900,000.00 in loans in the event Robins settled his claims against T&B or another defendant, Manpower, without first obtaining the consent of AXA's counsel. Robins further agreed to pay a $300,000.00 penalty if he settled with T&B without the consent of AXA's counsel.

The day after the second loan agreement was negotiated between AXA and Robins and the day before the trial of the consolidated lawsuits was to begin, October 7, 2001, Robins and T&B entered into a "Memorandum of Agreement" under which T&B agreed to pay Robins $5 million to settle his lawsuit against T&B. In that "Memorandum of Agreement," T&B also agreed to indemnify Robins for any sums he might be liable to pay AXA due to Robins having settled with T&B without first obtaining the consent of AXA's counsel.

New Hampshire contends that it was not involved in the settlement negotiations between T&B and Robins. Nevertheless, because it agreed that Robins' bodily injury claims were covered under T&B's policy with New Hampshire and that $5 million was a

reasonable amount to cover those claims, it agreed to pay $5 million towards that settlement.  New Hampshire, however, advised T&B via letter dated October 24, 2001 that it did not agree to the indemnity language set forth in Paragraph 5 of the "Memorandum of Agreement," *i.e.*, New Hampshire did not agree to repay the $900,000.00 in loans and the $300,000.00 penalty for which Robins would be liable for settling his claim against T&B without the consent of AXA's counsel.

On December 11, 2001, AXA made a written demand that Robins repay the $900,000.00 in loans and the $300,000.00 penalty.   At that time, New Hampshire maintained its position that, while it would pay the $5 million in settlement of Robins' bodily injury claim, it would not pay any additional sums in reference to T&B's agreement to indemnify Robins.  In January 2002, Federal, as T&B's excess insurer, paid $990,000.00 to settle T&B's agreement to indemnify Robins' for the $900,000.00 in loans and the $300,000.00 penalty.  Federal contends that it "stepped in and paid" that amount because it was "necessary to protect the interests of the insured [T&B]," which was at "imminent risk of an adverse judgment" relative to the ongoing Kaiser litigation.   Federal now seeks reimbursement of that $990,000.00 payment under the theory that, by virtue of that payment, it "bec[a]me legally and contractually subrogated to the rights of T&B to pursue [New Hampshire] for any obligation they otherwise would have had to this claimant under the policy they issued to [T&B]."

On July 6, 2009, New Hampshire (and a former party to this litigation, Chartis Claims, Inc.) filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of Federal's claims on the ground that Federal has no cause of action against them for contractual or legal subrogation.   Following the issuance of a report and

recommendation concerning that motion, the Court granted in part and denied in part that motion to dismiss on January 4, 2010, dismissing with prejudice plaintiff's claims against Chartis Claims, Inc. but allowing Federal to continue proceeding with its claims against New Hampshire. *See*, R. Doc. 46.

On January 25, 2010, a scheduling order was entered in this matter, setting a fact discovery deadline of August 15, 2010. *See*, R. Doc. 48. Since the entry of that scheduling order, counsel for Federal requested dates for the corporate deposition of New Hampshire and the deposition of James Maddiona and also submitted associated document requests to New Hampshire, but counsel for New Hampshire refused to provide any deposition dates or any responses to the document requests on the ground that he planned to file a motion for summary judgment. The requisite Rule 37.1 discovery conference occurred between counsel for Federal and New Hampshire on three (3) separate occasions: February 12, 2010, February 18, 2010, and March 11, 2010. Through its present motion, Federal seeks an order directing New Hampshire to participate in discovery by providing dates for the requested depositions and responses to the document requests. Federal further moves for an award of the attorney's fees and costs that it incurred in bringing this motion.

On the same date that it filed its opposition to Federal's present motion and its cross-motion for protective order, New Hampshire also filed a motion for summary judgment. In that motion, New Hampshire contends that this suit should be dismissed because Federal's voluntary agreement to pay $990,000.00 to satisfy T&B's contractual obligation to indemnify Robins for his repayment of a $900,000.00 loan and a $300,000.00 penalty is not a legal obligation covered under T&B's policy with New Hampshire. In brief, New Hampshire argues, in its summary judgment motion, that the contractual indemnity

payments made by Federal on behalf of T&B are not covered under the New Hampshire policy because such payments were not:  (1) a settlement of damages flowing from Robins' bodily injuries; or (2) a contractual assumption by T&B of tort liability.  According to New Hampshire, because T&B's agreement to indemnify Robins was a voluntary agreement to settle *contractual* liability owed by Robins to repay his loan and the penalty, and not covered *tort* liability, T&B cannot recover any payments it made from New Hampshire, and as a result, T&B has no rights against New Hampshire relative to those payments to which Federal is subrogated.

The undersigned agrees with New Hampshire that its summary judgment motion presents a pure question of law relating to contractual interpretation,[1] which could potentially dispose of the entire case without the necessity of the discovery requested by Federal that is at issue in its present motion.  Federal concedes that the discovery at issue relates to the handling of the underlying Kaiser litigation and includes the following topics: (1) New Hampshire's general claims handling procedures; (2) its general procedures related to periodic reporting of claims to reinsurers; (3) the relationship between New Hampshire and Chartis Claims, Inc.; (4) the New Hampshire employees and other

---

[1] Under T&B's policy with New Hampshire that is in question, New Hampshire agreed to pay sums that T&B "becomes legally obligated to pay by reason of liability imposed by law or assumed by [T&B] under an Insured Contract because of Bodily Injury."  *See*, Ex. 1 to New Hampshire's Motion for Summary Judgment, R. Doc. 50, at 3128.  Thus, the issue in New Hampshire's summary judgment motion is whether T&B's agreement to indemnify Robins for the $900,000.00 loan and the $300,000.00 penalty is covered under the above policy provision, such that T&B would have rights to reimbursement for such payments against New Hampshire to which Federal is subrogated.  New Hampshire contends that the indemnity payment is not covered under the above policy provision because (1) it did not constitute a settlement of damages flowing from Robins' bodily injuries (according to New Hampshire, only the $5 million payment that it made constituted a settlement payment for Robins' bodily injuries; the $990,000 payment by Federal was to settle contractual liability owed by Robins to repay his loan and the penalty owed to AXA), (2) nor did it constitute a contractual assumption by T&B of any tort liability.  *See*, New Hampshire's Memorandum in Support of Motion for Summary Judgment, R. Doc. 50-1; *Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639, 641 (5th Cir. 2001)(The interpretation of an insurance policy is a question of law, which can be decided upon summary judgment).

individuals involved in the handling of the Kaiser claim; (5) communications between any parties during the handling of the Kaiser claim; (6) coverage positions taken and reserve information related to the Kaiser claim; (7) litigation or settlement strategy regarding the Kaiser litigation; and (8) facts and circumstances justifying the subject payments. *See*, Rule 30(b)(6) Deposition Notice, attached to Federal's motion as Exhibit A.  Discovery concerning those topics is only needed if it is initially determined that the $990,000.00 payment made to Robins on behalf of T&B is even covered under the language of New Hampshire's policy.[2]  As such, the undersigned finds that discovery in this matter should be temporarily stayed and that Federal's present motion to compel should be dismissed without prejudice to it refiling such motion after the Court has issued a ruling concerning

---

[2] It has been held appropriate to temporarily stay discovery in a case where preliminary questions of law that may dispose of the case are determined.  *Petrus v. Bowen*, 833 F.2d 581, 582 (5th Cir. 1987); *Brazos Valley Coalition for Life, Inc. v. City of Bryan, Tex.*, 421 F.3d 314 (5th Cir. 2005)(District court did not abuse its discretion in grating defendant's motion to stay discovery pending resolution of cross motions for summary judgment, absent a showing that discovery was related to the defendant's motion for summary judgment which, with respect to plaintiffs' prospective claims, raised pure questions of law); *Dresser v. MEBA Medical & Benefits Plan*, 2008 WL 2705584 (E.D.La. 2008)(finding no abuse of discretion in ordering a brief temporary stay of discovery pending the determination of the defendant's dispositive motion.  The court noted that a plaintiff's entitlement to discovery prior to a ruling on a motion to dismiss is not unlimited and may be terminated when the record shows that the requested discovery is not likely to produce the facts necessary to withstand judgment as a matter of law.  The defendant had advanced "good cause" under Rule 26(c) and the unique posture of the case made a temporary stay practical.  In balancing the harm produced the temporary stay of discovery (which was considered nil) against the *possibility* that the motion to dismiss would be granted and entirely eliminate the need for such discovery, the court had properly determined that a temporary stay of discovery was appropriate); *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990)(finding in an ERISA case that there was no abuse of discretion in an order staying discovery pending the resolution of dispositive motions); *Enplanar Inc. v. Marsh*, 25 F.3d 1043, 1994 WL 261088 (5th Cir. 1994)(unpublished)(finding no abuse of discretion where the district court declined to grant additional discovery pending the determination of a motion to dismiss); *Paul Kadair, Inc. v. Sony Corp. of America*, 694 F.2d 1017, 1030 (5th Cir. 1983)(noting that a district judge may exercise his discretion to prevent the plaintiff from burdening the defendant with a needless round of discovery); *Parish of Jefferson v. Louisiana Southern Recovery Management, Inc.*, 1996 WL 144400 (E.D.La. 1996)(vacating the Magistrate Judge's order denying defendant's motion to stay discovery, citing *Petrus v. Bowen*, 833 F.2d 581, 582 (5th Cir. 1987)).

New Hampshire's summary judgment motion.[3]

Accordingly;

**IT IS ORDERED** that the Motion to Compel Rule 30(b)(6) Deposition of New Hampshire Insurance Company, Deposition of James Maddiona and Other Discovery (R. Doc. 49) filed by plaintiff, Federal Insurance Company, is hereby **DENIED WITHOUT PREJUDICE** to Federal refiling such motion after the Court has issued a ruling concerning the Motion for Summary Judgment filed by defendant, New Hampshire Insurance Company.

**IT IS FURTHER ORDERED** that the Cross-Motion for Protective Order (R. Doc. 51) filed by defendant, New Hampshire Insurance Company, is **GRANTED IN PART** in that discovery in this matter shall be temporarily stayed until after the Court has issued a ruling concerning New Hampshire's Motion for Summary Judgment.

Signed in chambers in Baton Rouge, Louisiana, April 30, 2010.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[3] If New Hampshire's summary judgment motion is denied and Federal refiles its motion to compel at a later date, the undersigned will address, at that time, the other arguments of New Hampshire concerning the alleged overbreadth of Federal's discovery requests considering the issues in the case.